# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

MICHAEL D. JONES,

    Plaintiff,

        v.

EVRAZ INC. NORTH AMERICA, *et al.*,

    Defendants.

Civil Action No.
1:18-cv-04519-SDG

## MEMORANDUM OF DECISION
## AND OPINION AND ORDER

This long-running litigation involves claims under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132, *et seq*. Plaintiff Michael D. Jones filed suit in September 2018, alleging that Defendants wrongfully failed to pay him benefits to which he was entitled under a pension plan and breached various disclosure obligations related to the plan.[1] Jones later amended his pleading to add additional claims for other fiduciary duty breaches.[2] Before the Court are Defendants' Motion for Judgment on the Administrative Record and for Summary Judgment (the Summary Judgment Motion) [ECF 102] and Motion to Exclude Testimony of Plaintiff's Expert [ECF 103], along with Jones's Motion to

---

[1] ECF 1.

[2] ECF 94.

Supplement Administrative Record and Brief in Support (the Motion to Supplement) [ECF 119].[3] Having reviewed the parties' briefing, and with the benefit of oral argument, the Court **GRANTS in part** and **DENIES in part** the Motion to Supplement, **GRANTS** the Summary Judgment Motion, and **DENIES AS MOOT** the motion to exclude.

## I.    Motion for Judgment on the Administrative Record

Defendants clarified during oral argument that they seek judgment on the administrative record solely with regard to Jones's cause of action for wrongful termination of and failure to pay benefits under the pension plan (Count I). The Court's assessment of that claim is limited to determining whether Defendants' benefits decision was arbitrary and capricious based on the administrative record. To do so, however, the Court must first assess the propriety of Jones's Motion to Supplement that record. "The first step of the [ ] test requires *de novo* review of an administrator's benefits decision, which in turn involves consideration of the full

---

[3]    Defendants are EVRAZ Inc. North America; Pension Plan for Employees of EVRAZ Inc., N.A.; EVRAZ Inc., N.A. Administrative Committee, as Administrator of the Plan; Trust for the Pension Plan for Employees of EVRAZ Inc., N.A.; The Charles Schwab Trust Company, as Trustee; and EVRAZ Inc. N.A. Investment Committee, as Administrator of the Trust.

administrative record that was before the administrator when it rendered its decision." *Williamson v. Travelport, LP*, 953 F.3d 1278, 1289 (11th Cir. 2020).

### A.    Motion to Supplement

#### 1.    Background

The October 16, 2015 letter from the Administrative Committee denying Jones's appeal was not included with the administrative record filed by Defendants in support of their Summary Judgment Motion. Shortly after oral argument, the Court asked either side whether they had any objection to the Court considering that letter when deciding whether to grant judgment on the administrative record. Neither side objected, but counsel for Jones took the Court's inquiry as an opportunity to belatedly object to the fact that a *certified* copy of the administrative record had never been filed in this case.

On August 25, 2021, the Court directed Defendants to file a declaration certifying the record.[4] In response, on September 1, Defendants submitted a Declaration of Record Custodian that attached the "complete record on which the Administrative Committee of the Plan based its decision in connection with the request for benefits made by" Jones.[5] The only readily apparent difference

---

[4]    Aug. 25, 2021 D.E.

[5]    ECF 118, at 2 ¶ 3. *See generally* ECF 118.

between this "certified" record and the materials that Defendants originally filed as the administrative record in support of their Summary Judgment Motion are the inclusion of minutes from the October 13, 2015 meeting of the Administrative Committee.[6] On September 20, Defendants refiled the declaration from the custodian of records to  replace (among other things) certain illegible pages.[7] The exhibits otherwise appear to be the same in all material respects as those filed by Defendants on September 1.[8] On September 17, Jones responded to the certification of the record by filing his Motion to Supplement.

## 2.    Discussion

After completion of dispositive briefing and oral argument, Jones, for the first time, contends that "the Administrative Record is incomplete with no source documents upon which calculations could be based . . . , no employment or personnel or medical records to use while making their decision, and other omissions."[9] Attached to his motion are over 300 pages that he claims "are part of the documents 'relied on' and 'all other documents submitted, considered, or

---

[6]   ECF 118, at 3–4. *Compare* ECF 118, at 3–141, *with* ECF 102-3, at 3 through ECF 102-6, at 20.

[7]   ECF 120.

[8]   *Compare* ECF 120, *with* ECF 118.

[9]   ECF 119, at 2. *See generally id.*

generated in the course of making the decision.'"[10] In addition to these materials, Jones asks that the Court direct Defendants to supplement the administrative record with documents that are not actually included in his proposed supplement but are purportedly required under federal regulations.[11] Jones insists the Court "should order Defendants to carefully examine the Regulations, and supplement the AR with all other documents required under 29 C.F.R. § 2560.503-1(h)(2)(iii) and 29 C.F.R. § 2560.503-1(m)(8)."[12] Jones has not, however, provided any explanation for why he waited until after the completion of dispositive  briefing and oral argument to raise these issues.

Although Jones raised the argument that *Defendants* relied on an incomplete record in making the benefits determination,[13] he has never before suggested that the administrative record filed in support of Defendants' Summary Judgment Motion did not contain everything on which the Administrative Committee relied or that (as he contends) should have been included. Nor did Jones attach any of the supposedly missing materials to his brief opposing the Summary Judgment

---

[10]   ECF 119, at 3 (quoting 29 C.F.R. § 2560.503-1(m)(8)(iii)). *See generally* ECF 119-1 through 119-28.

[11]   ECF 119, at 19. *See generally* ECF 119-1 through ECF 119-28.

[12]   ECF 119, at 19.

[13]   ECF 108, at 1.

Motion.[14] Jones has not made any argument about why the Court should ignore his delinquency in raising these issues. In any event, as will be discussed further below, the Court has reviewed the documents and description of documents that Jones seeks to add to the administrative record and concludes that such documents would not change its findings of fact and conclusions of law herein; it does, however, believe it is appropriate for the certified copy of the administrative record to include the plan on which the benefits determination was based (Exhibit 3 to Jones's Motion to Supplement).

Accordingly, Jones's Motion to Supplement is **GRANTED in part** and **DENIED in part**.

### B.    Findings of Fact

The Court makes the following factual findings based on the administrative record. Fed. R. Civ. P. 52(a)(1) ("In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court.").

---

[14]    *Compare* ECF 119-1 through ECF 119-28, *with* ECF 108.

###### 1.     The Plan

On December 31, 1959, Oregon Steel Mills (a predecessor to Defendant EVRAZ Inc. North America (EVRAZ)) adopted a pension plan (the Plan).[15] The Plan was restated on January 1, 2010,[16] and the benefits determination was based on that 2010 version of the Plan.[17]

The Plan contains the following relevant provisions: The Plan is funded through a trust, Defendant Trust for the Pension Plan for Employees of EVRAZ Inc., N.A. (the Trust).[18] The Trustee (Defendant The Charles Schwab Trust Company) is responsible for designating a custodian to hold contributions to and distribute benefits under the Plan.[19] An Investment Committee is responsible for administering and managing the funds held by the Trust.[20] An Administrative Committee administers the Plan and has the authority to direct the payment of

---

[15]   ECF 102-4, at 70.

Although Jones's period of active work ended while the company was still known as Oregon Steel Mills, for ease of reference, the Court refers to the entity as "EVRAZ" regardless of the particular time period.

[16]   ECF 119-3, at 8.

[17]   *See generally* ECF 120.

[18]   ECF 119-3, at 47 § 8.05.

[19]   *Id.*

[20]   *Id.* at 44 § 7.01-1; *id.* at 47 § 8.01.

benefits.[21] Each committee is vested with "absolute discretion to carry out its responsibilities."[22] The language of the Plan seems to contemplate that the Administrative Committee and Investment Committee be separate bodies, but does not expressly require it.[23] During the period of time relevant to Jones's claims, there was only one committee—the Employee Retirement Plan Investment and Administrative Committee.[24]

### 2. Early Retirement & Disability Retirement Benefits

Individuals entitled to participate in the Plan are "Participants," and the Administrative Committee is required to provide them with certain information about the Plan.[25] Some benefits are based on a person's years of service at EVRAZ; specifically defined periods of disability count toward such service.[26] When a Participant's employment ends at the age of 65 or later, the Participant is entitled

---

[21] *Id.* at 44 §§ 7.01-1, 7.02-1; *id.* at 47 § 8.05.

[22] *Id.* at 44 § 7.02-1.

[23] *See, e.g., id.* at 44 § 7.01-1 (stating "[e]ach Committee shall . . . ." and "[a] Committee may . . . ." ). *See also generally* ECF 119-3.

[24] *See, e.g.,* ECF 120, at 6.

[25] ECF 119-3, at 12 § 3.01-5.

[26] *Id.* at 12–13 § 3.02-2(d); ECF 119-3, at 40 § 5.02-1.

to retirement benefits.[27] If a Participant retires between the ages of 55 and 65 with at least 15 years of service, the Participant is eligible for early retirement benefits.[28]

Becoming disabled also entitles Participants to disability retirement benefits if particular criteria are met. The Plan addresses two periods of disability relevant here—the first two years of continuous impairment and continued impairment after those first two years.

> **5.02-2** "Disability" means a condition of mind or body that is expected to continue indefinitely and meets the following conditions:
>
> (a) During the first two years of a continuous impairment, the disability prevents the Participant from performing the Participant's normal job with [EVRAZ].
>
> (b) After the first two years of continuous impairment, the disability prevents the Participant from engaging in any substantial gainful occupation or employment for which the Participant is qualified or may reasonably become qualified by training, education or experience.[29]

As for the disability retirement benefits,

> **5.02-5** A Participant disabled under 5.02-2 shall retire and receive benefits in accordance with the following rules . . . .

---

[27]   ECF 119-3, at 17 § 4.01-2(a), (c).

[28]   *Id.* § 4.01-2(b). *See also id.* at 21 § 4.03.

[29]   *Id.* at 40–41 § 5.02-2.

> (b) . . . the Participant may elect to retire at any time after both of the following have occurred:
>
>> (1) Any period of pay continuation and unused vacation time has ended.
>>
>> (2) The Participant is otherwise eligible for retirement. . . .[30]

### 3.    Jones's disability

Jones began working for EVRAZ in February 1989.[31] He last actively performed work on August 1, 1996.[32] On August 2, 1996, Jones began a leave of absence due to disability and started collecting short-term disability benefits from EVRAZ.[33] On January 31, 1997, Jones began receiving long-term disability (LTD) benefits from EVRAZ's LTD carrier, MetLife.[34] In December 1998, Jones was awarded disability benefits (SSDI) through the Social Security Administration.[35] The award was made retroactive to February 1997.[36] As a result, he immediately

---

[30]   *Id.* at 41 § 5.02-5.

[31]   ECF 120, at 6.

[32]   *Id.*

[33]   *Id.* at 6–7.

[34]   *Id.* at 6.

[35]   *Id.* at 12–13.

[36]   *Id.*

owed a large overpayment to MetLife for that period since he was not entitled to collect the full amount of LTD benefits and SSDI at the same time.[37]

### 4.    Jones's EVRAZ benefits end

Jones called MetLife in October 1999 to report that he was moving to Georgia.[38] MetLife's records reflect that Jones said he was moving in order to take a new full-time job.[39] Although Jones hotly disputes the accuracy of this reported conversation (which dispute is reflected in the administrative record),[40] there is no question that this is what MetLife's records show.[41] MetLife ended Jones's LTD benefits on October 24, 1999, reasoning that he was no longer considered disabled under the terms of the LTD insurance policy.[42] That policy made a person ineligible for benefits if he was capable of *any* gainful employment (not **substantial** gainful employment—more on this later). Jones was informed of MetLife's

---

[37]  *Id.* at 12–13, 104.

[38]  *Id.* at 11.

[39]  *Id.* at 7, 11.

[40]  *Id.* at 94–95.

[41]  *See, e.g., id.* at 64–66, 87–89.

[42]  *Id.* at 6–7, 87–89.

decision by letter dated October 28, 1999, return receipt requested, which was signed for by a person at Jones's listed address.[43] Jones did not appeal.[44]

     **5.    Jones's application for early retirement or disability benefits**

On October 17, 2014, 15 years after his last contact with EVRAZ, Jones sent a letter to the EVRAZ human resources manager requesting disability or early retirement benefits, as well as a written explanation of his benefits options.[45] He specifically asked that the document be forwarded to the Administrative Committee.[46]

On March 16, 2015, Jones (through his then-counsel) formally applied for early retirement benefits.[47] At the time, Jones was 56 and therefore eligible for such benefits *if* he had attained 15 years of service.[48] Jones's lawyer insisted that Jones had been continuously disabled since 1996 and therefore had continued to accrue eligibility since 1996 when he was first placed on short-term disability.[49]

---

43   *Id.* at 87–89.

44   *Id.* at 15.

45   *Id.* at 21–28.

46   *Id.* at 21.

47   *Id.* at 6–7, 61–62.

48   *Id.* at 6.

49   *Id.* at 62.

On May 4, 2015, Pamela Orvis, on behalf of the Administrative Committee, sent Jones's attorney a letter stating that Jones was not entitled to immediate early retirement benefits.[50] The letter reported that Jones had stopped accruing service for purposes of the Plan in October 1998.[51] He was therefore ineligible for immediate early or disability retirement.[52] Despite that conclusion, Orvis's letter stated that Jones would be able to collect a deferred disability pension under Section 5.02-5(c) of the Plan once he reached 65.[53] This determination was reached without review of Jones's EVRAZ employment or medical files, which could not be located given that he had last actively worked for EVRAZ in 1996 and had ceased receiving LTD benefits in October 1999.[54] The record indicates that Jones's initial claim was reviewed by Orvis (EVRAZ's Senior Director of Compensation & Benefits) and outside counsel.[55] But it does not reflect that relevant decisions were

---

[50]   *Id.* at 141–42.

[51]   *Id.*

[52]   *Id.*

[53]   *Id.*

[54]   *Id.* at 10, 14, 54.

[55]   *Id.* at 6.

made *only* by Orvis.[56] Rather, Orvis's communications to Jones reflect that she was

responding on behalf of the Administrative Committee.[57]

### 6.   Jones appeals

Jones made a formal appeal of the benefits determination on July 1, 2015.[58]

Jones provided an affidavit attesting that he did not work from 1996 until late 2004,

when he started to work part-time.[59] This was substantiated by Jones's SSDI

benefits statements and echoed in a letter by his lawyer.[60] In fact, Jones's lawyer's

August 10, 2015 letter emphasized that "there is no [ ] evidence to suggest that

Mr. Jones had income from work between 1999 and 2004."[61] Thus, despite his

counsel's earlier assertion that Jones had been continuously disabled since 1996,[62]

Jones never presented any evidence to the Administrative Committee that he

continued to be disabled as defined by the Plan after 2004.[63]

---

[56]   *Id.*

[57]   *Id.* at 11, 70–76.

[58]   *Id.* at 11.

[59]   *Id.* at 13, 94–95.

[60]   *Id.* at 13, 93, 96–103.

[61]   *Id.* at 93.

[62]   *Id.* at 62.

[63]   *Id.* at 15 ("To date, no evidence has been presented that Mr. Jones remained unable to do any work, beyond 2004."). *See generally* ECF 120.

On October 16, 2016, Orvis wrote on behalf of the Administrative Committee to Jones's attorney, issuing the decision on Jones's appeal.[64] Based on the information Jones supplied in connection with his appeal, Jones was credited with service under the Plan through December 2004 (at which point he was 46).[65] The Committee upheld its determination that Jones was not qualified for immediate early retirement or disability retirement benefits.

## C. Applicable Legal Standard

The Eleventh Circuit has adopted a six-part test for reviewing decisions by an administrator of an ERISA-governed benefits plan:

(1)  Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2)  If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

---

[64]  ECF 90-10. Although the administrative record filed with Defendants' Summary Judgment Motion does not contain a copy of this letter, counsel for Jones and for Defendants confirmed that they do not object to the Court's consideration of it in ruling on the motion for judgment on the administrative record. The letter was used as an exhibit during the deposition of Defendants' 30(b)(6) witness, but it is not part of the certified administrative record.

[65]  *Id.* at 1–2.

(3)   If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4)   If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5)   If there is no conflict, then end the inquiry and affirm the decision.

(6)   If there is a conflict, the conflict should merely be a factor for the Court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011) (cleaned up);

*Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1137–38 (11th Cir. 2004),

*overruled on other grounds by Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d

1352 (11th Cir. 2008).

When the administrator "is vested with discretion to determine eligibility

under [the] plan . . . [the Court] owe[s] deference to its determination." *Doyle*, 542

F.3d at 1363 (citation omitted). It is Jones's burden to establish his entitlement to

benefits. *Bauman ex rel. Sumner v. Publix Super Mkts., Inc. Emp. Stock Ownership Plan*,

No. 3:15-cv-75-WSD, 2017 WL 5236148, at *7 (Mar. 17, 2017 N.D. Ga.) (citations

omitted). Further, in applying the *Blankenship* test, the Court is limited to considering only the information available to the administrator at the time of its determination. *Blankenship*, 644 F.3d at 1354.

### D.    Conclusions of Law

Defendants assert that the Court must uphold the Administrative Committee's benefits determination because: (1) Jones does not meet any of the requirements for the immediate payment of early or disability retirement benefits under the Plan; (2) the Administrative Committee's decision was not arbitrary and capricious; and (3) the Administrative Committee's decision was not influenced by a conflict of interest.[66] In response, Jones asserts that he was eligible for early retirement benefits because EVRAZ never terminated his employment;[67] he was continuously disabled through his 55th birthday;[68] there were no reasonable grounds for the Administrative Committee's decision;[69] and that decision cannot withstand the heightened scrutiny the Court must apply.[70] The Court agrees with Defendants' position.

---

[66]   ECF 102-1, at 3–13.

[67]   ECF 108, at 6–7.

[68]   *Id.* at 7–11.

[69]   *Id.* at 12.

[70]   *Id.* at 13–18.

### 1. The Administrative Committee's decision was not *de novo* wrong

Jones argues that he is entitled to early retirement benefits under Section 4.01 of the Plan.[71] This section provides that a Plan Participant is eligible to take early retirement when his employment ends after he has reached 15 years of service and is between 55 and 65 years old.[72]

Jones's October 2014 letter made a general request for "Disability/Early Retirement," but did not provide any explanation about why he was eligible for

---

[71]  *Id.* at 6–7.

  Jones's Motion to Supplement seems to suggest that the 2010 version of the Plan is not the one on which his benefits determination should have been based. [ECF 119, at 11.] Jones never raised this issue before the Administrative Committee and has not clearly raised it with the Court even now. As a result, the Court relies on the arguments put forward by Jones in his opposition to the Summary Judgment Motion, which are based on the 2010 Plan.

  Moreover, the Summary Plan Description for EVRAZ's predecessor (dated January 1, 2002) and the Plan itself were filed by Defendants in support of their Summary Judgment Motion [ECF 102-3 through ECF 102-6], and have been reviewed by the Court. It does not find that these documents (categories 1–3 in Jones's motion to supplement) alter its analysis.

  Jones also asserts that the employee handbook for EVRAZ's predecessor and annual funding notices should have been included in the Administrative Record, but does not explain how any of these materials would affect the Court's *Blankenship* analysis. [ECF 119, at 12–13.]

[72]  ECF 119-3, at 17 § 4.01-2(b).

such benefits.[73] The March 2015 demand for benefits from Jones's attorney stated that Jones was entitled to "retirement pension benefits" based on his continuous disability from 1996 through the then-present.[74] He contended Jones was immediately eligible to receive benefits because he had more than 15 years of service and had reached the age of 55.[75] On appeal, Jones conceded that he could not engage in any substantial gainful employment "until at least late 2004" and says nothing about his ability to work thereafter.[76] Jones provided evidence that he was disabled through 2004.[77] At the end of 2004, Jones was 46.[78] There is simply no evidence in the administrative record suggesting that any disability prevented Jones "from engaging in any substantial gainful occupation or employment" after 2004.[79] Thus, Jones did not meet both necessary criteria—15 years of service and retirement from EVRAZ after the age of 55—to be entitled to receive early retirement or disability retirement benefits.

---

[73]   ECF 120, at 21–28.

[74]   *Id.* at 61–62.

[75]   *Id.*

[76]   *Id.* at 79–80, 93–95.

[77]   *Id.* at 13, 93–95.

[78]   *Id.* at 122.

[79]   ECF 119-3, at 40 § 5.02-2(b).

Even the materials Jones claims are missing from the administrative record (such as election forms, payment history, reports and records from Met Life, social security disability records, medical records[80]) do not move the needle. The social security and medical records tendered do not show a continuous disability after 2004. And his payment history would only be relevant to determining the amount of benefits to be paid *if* Jones were immediately eligible to collect them. He is not.

### *i.*  Termination of employment

Jones asserts that Defendants have provided him with three different termination dates, but cannot explain how those dates were determined.[81] Jones contends his employment with EVRAZ was *never* terminated—he never received a termination letter and therefore continued to accrue service.[82] Since he is now over 55 and his eligible service has been accruing since 1989, Jones asserts he meets the requirements of Section 4.01.

The administrative record shows that MetLife terminated Jones's LTD benefits in October 1999.[83] It sent him a letter confirming that the benefits were

---

[80]  ECF 119, at 12–13.

[81]  ECF 108, at 6–7.

[82]  *Id.* at 7.

[83]  *See generally* ECF 120, at 86–89.

being terminated because Jones had started to work full time with another employer, and that he owed $28,793 in overpaid benefits.[84] Although Jones attests that MetLife never informed him why the benefits were discontinued, it is clear MetLife sent the letter.[85] The letter was delivered as addressed and signed for at that address.[86] The record is also clear that Jones did not appeal the discontinuation of his LTD benefits.[87] Jones asserts this is because he owed MetLife for the overpayments.[88] Whatever the reason for Jones's failure to appeal, it is plain that he did not receive any benefits from or have any contact with EVRAZ from October 1999 through September 2014.[89]

Under Section 3.02-5(a) of the Plan, an employee's severance from service occurs when the employee quits.[90] After October 1999, Jones did not perform any work for EVRAZ, was not paid any benefits from it, and did not have any contact with it. At that point, he left the state where his job was located and moved to

---

[84]   *Id.* at 87.

[85]   *Id.* at 94.

[86]   *Id.* at 89.

[87]   *Id.* at 94.

[88]   *Id.*

[89]   *See generally* ECF 120.

[90]   ECF 119-3, at 13.

Georgia. It was not until late 2014—15 years later—that Jones first contacted EVRAZ about retirement benefits.

Even pushing the 1999 date out to the end of 2004—the point through which Jones established he was disabled—does not aid Jones's argument. That is because he is still ineligible for early retirement benefits since he did not turn 55 until December 2013. He needed 15 years of service **and** to retire between the ages of 55 and 65 to be eligible.[91] Given the record evidence, there is no reasonable basis for the Court to conclude that Jones's employment and accrual of service continued past December 2004.

### ii.   Continuous disability

The Court does not doubt the seriousness of Jones's disability. However, review is restricted to the administrative record. And it is here that Jones's problems lie. By relying on his *assertion* that he has continuously been disabled since 1996 rather than the record *evidence*, Jones improperly seeks to shift the burden onto Defendants to show otherwise.

Viewing the administrative record in the light most favorable to Jones, there is no evidence that Jones was disabled under the terms of Plan after 2004. Jones's

---

[91]   *Id.* at 17 § 4.01-2(b). *See also id.* at 21 § 4.03.

administrative appeal walked back the initial assertion made by his then-counsel—which was not supported by evidence—that Jones had been continuously disabled since 1996.[92] The affidavit Jones supplied as part of that appeal (and on which he now places much weight) does not state that he was unable to work after 2004, and he provided no evidence that he did not work after that point because of a disability.[93] Thus, Jones's current focus on whether the MetLife standard for terminating his LTD benefits in 1999 (capable of any gainful employment) was the same as the definition of disability under Plan Section 5.02-2(b) (capable of any *substantial* gainful occupation or employment) is immaterial.[94] And since Jones was not otherwise qualified to retire in 2004 under the Plan, he is ineligible under Section 5.02-5(b) for disability retirement benefits at this point.[95]

Accordingly, the Court concludes under a *de novo* review that the Administrative Committee's decision to deny Jones early retirement benefits was not wrong. Despite that conclusion, the Court analyzes the remaining *Blankenship*

---

[92]   *Compare* ECF 120, at 61–62, *with id.* at 94–95.

[93]   *Id.* at 94–95.

[94]   *Compare id.* at 7, 87, *with* ECF 119-3, at 40–41 § 5.02-2.

[95]   ECF 119-3, at 41 § 5.02-5.

factors for the sake of completeness, to address the substance of certain materials included with Jones's Motion to Supplement, and because they impact the Court's decisions with regard to Jones's other causes of action.

### 2. The Administrative Committee had discretion to make its decision

The Court previously concluded, and the parties agree, that the Administrative Committee had discretionary authority to interpret the Plan and determine Jones's eligibility for benefits.[96] Accordingly, the Court applies an arbitrary and capricious standard of review to the Committee's decisions. *Blankenship*, 644 F.3d at 1355; *Doyle*, 542 F.3d at 1356.

### 3. The Administrative Committee's decision was supported by reasonable grounds

The reasonableness of the Administrative Committee's decision is amply demonstrated by the Court's *de novo* assessment above, particularly since the Court's independent reasoning closely tracks the Committee's process. The Administrative Committee credited Jones with service under the Plan through December 2004—making the dispute about whether Jones's LTD benefits were improperly cut off by MetLife in October 1999 irrelevant.[97] This meant Jones had

---

[96]   ECF 51, at 4.

[97]   ECF 90-10, at 1–4.

15 years of service,[98] but did not qualify for early or disability retirement benefits because he had not yet reached the age of 55 when his service ended. Jones has not presented anything reasonably refuting the common sense conclusion that Jones abandoned his job at EVRAZ by (1) not receiving any pay or benefits from it, (2) not performing any work for it, (3) moving out of state, and (4) not having any contact with it for a decade-and-a-half. Nothing that Jones wants added to the administrative record alters this logic.

### 4.    There was no conflict of interest

The assessment of whether there is a relevant conflict is narrow: "A pertinent conflict of interest exists where the ERISA plan administrator both makes eligibility decisions and pays awarded benefits out of its own funds." *Blankenship*, 644 F.3d at 1355. The evidence presented by the parties indicates that benefits were not paid out of the Administrative Committee's own funds. Rather, under the Plan the funds were held in the Trust, which was managed by the Trustee.

Jones argues that there was a conflict of interest because the Plan required the Administrative Committee and Investment Committee to be separate entities and they were combined during the time period relevant to his claims.[99] Although

---

[98]    *Id.*

[99]    ECF 108, at 13–14.

this might matter for his breach of fiduciary duty claims (discussed below), it is not the type of structural conflict the Eleventh Circuit has instructed courts to consider under *Blankenship*.

Jones further argues that all decision-making was improperly vested in only one person (Orvis),[100] but the administrative record does not support this. Rather, the evidence shows that Orvis and outside counsel reviewed Jones's initial claim, not that they made any benefits determination on their own without acting on behalf of the Administrative Committee.[101] Nor does Jones offer any evidence on how Orvis's role in the decision-making process constitutes a conflict of interest under *Blankenship*. It does not.

Even if the purported conflict relied on by Jones was relevant, it is still his burden to show that the conflict rendered the benefits decision arbitrary and capricious. *Blankenship*, 644 F.3d at 1357; *Doyle*, 542 F.3d at 1360. Jones fails to tie the alleged conflict to the reasonableness of the benefits decision. He does not show that the combined Administrative and Investment Committee's

---

[100]  *Id.* at 15.

[101]  ECF 102-3, at 6 ("That claim was reviewed by me, with the assistance of our outside legal counsel . . . and the decision was made to deny it and instead notify Mr. Jones that he will be entitled to a deferred disability pension when he reaches age 65, in about nine more years."). *See also id.* at 11, 70–76.

determination was "improperly motivated by short-term gain." *Blankenship*, 644 F.3d at 1357. *See also Doyle*, 542 F.3d at 1363 ("There is no evidence showing that [the administrator] was influenced by conflict.").

### 5.    Documents not part of the administrative record

The Court has reviewed the documents Jones attached to his opposition to the Summary Judgment Motion, as well as those included with his Motion to Supplement (including descriptions of the documents he apparently does not have). To the extent these materials were not already part of the administrative record, the Court does not find that any of them alter its analysis. The central issue is Jones's failure to provide anything to the Administrative Committee suggesting he remained continuously disabled after 2004. Such information was entirely within Jones's control and available to him throughout the administrative process. Nothing in the documents Jones now seeks to have added to the administrative record changes this fatal fact. Indeed, at least one page of the materials indicates Jones *was* able to work in 2004, 2005, and 2006.[102]

The communications between Jones and the Administrative Committee's counsel that took place *after* the final denial of benefits are not appropriately

---

[102]  ECF 199-11, at 51.

included in the administrative record.[103] Letters from the Committee's counsel repeatedly attempt to explain to Jones the reasoning for the Committee's decision.[104] Jones contends these were further efforts on his part to obtain review of his claim.[105] But they were plainly not relied on by the Administrative Committee in making its benefits determination and should not therefore be included as part of the record. "Review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision." *Blankenship*, 644 F.3d at 1354 (citing *Jett v. Blue Cross & Blue Shield of Ala., Inc.,* 890 F.2d 1137, 1140 (11th Cir. 1989)).

Defendants are entitled to judgment on the administrative record as to Count I. The Administrative Committee's decision is affirmed.

## II.    Motion for Summary Judgment

During oral argument, Defendants clarified that they are seeking summary judgment with regard to Counts Two through Eight. To the extent there are relevant facts (or disputes of fact) that were not discussed above, the Court addresses them as necessary below.

---

[103]  ECF 119, at 18–19; ECF 119-18 through ECF 119-25.

[104]  *See, e.g.*, ECF 119-19, ECF 119-22 through ECF 119-25.

[105]  ECF 119, at 19.

### A.    Applicable Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255. *See also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the

Court in ruling on a summary judgment motion. *Anderson*, 477 U.S. at 255. *See also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.   Jones's Claims for Breach of Fiduciary Duty—Counts 2, 6–8

Jones asserts several claims for breaches of fiduciary duty. Count Two alleges breaches because of Defendants' failure to give him notice of his Plan eligibility and provide him the required yearly notices.[106] (Jones also asserts that it was a breach for Defendants to refuse to pay him benefits under the Plan.) Count Six alleges that Defendants breached their statutory ERISA fiduciary duties under 29 U.S.C. § 1104 because they did not have Jones's employment file, and had no proof that he was ever terminated from EVRAZ or that his disability status ever changed, and relied on unverified information from MetLife to deny his claim for benefits.[107] Count Seven is based on the purported conflict of interest created by

---

[106]   ECF 1, ¶¶ 70–76.

[107]   Counts Three and Five relate to Jones's sought-after damages, and Count Four is for declaratory judgment. *Id.* ¶¶ 77–88. Because these counts are entirely dependent on Jones's substantive causes of action, the Court does not separately address them.

Defendants' use of a combined Administrative and Investment Committee.[108] Count Eight is based on the contention that Orvis was the sole person responsible for deciding Jones's eligibility for benefits.[109]

### 1.   Count 2

Count Two is based on duties owed under 29 U.S.C. §§ 1021(f)(1) and 1024(b)(1). Section 1021(f)(1) provides:

> The administrator of a defined benefit plan to which subchapter III applies shall for each plan year provide a plan funding notice to the Pension Benefit Guaranty Corporation, to each plan participant and beneficiary . . . .

Section 1024(b)(1) states:

> The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 1022(a) of this title—
>
> (A)   within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits . . . .

---

On December 18, 2020, the Court granted Jones's unopposed motion for leave to amend the Complaint. Dec. 18, 2020 D.E. On December 29, Jones filed a supplement to the original Complaint which added Counts Six through Eight, but did not change any of the substance of the original pleading [ECF 1]. As a result, only the new causes of action are reflected in the supplement [ECF 94].

[108]   ECF 94, ¶¶ 107–09.

[109]   *Id.* ¶¶ 115–20.

The Eleventh Circuit has made clear that a plaintiff must exhaust his administrative remedies prior to seeking relief in federal court in ERISA actions. *Bickley v. Caremark Rx, Inc.*, 461 F.3d 1325, 1328–29 (11th Cir. 2006). Here, Defendants admit exhaustion, but contend the claim is time-barred.[110]

Under 29 U.S.C. § 1113(2), Jones was required to bring suit against Defendants within "three years after the earliest date on which [he] had actual knowledge of the breach or violation." On October 17, 2014, Jones requested from the Administrative Committee (among other things) a written explanation of his benefits options.[111] Jones asserts that the letter clearly requested a copy of the Plan itself.[112] Taking this statement on its face, it means that Jones knew by October 2014 that he had not received the information he now asserts Defendants were required to provide him under Sections 1021 and 1024. And Jones certainly knew by March 2015, when (through his then-counsel) he formally sought benefits under the Plan, that he had not received such information.[113] Jones initiated this suit in September 2018 — more than three years later.

---

[110]   ECF 94, ¶¶ 13, 61; ECF 97, ¶¶ 13, 61.

[111]   ECF 102-3, at 19–26.

[112]   ECF 108, at 18–19.

[113]   ECF 102-3, at 4–5.

Jones nevertheless contends that Defendants waived the statute of limitations defense by failing to raise it in their initial answer.[114] Defendants correctly counter that they raised the defense in their answer to Jones's FAC.[115] This superseded their original pleading and includes the statute of limitation defense. *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) ("An amended pleading supersedes the former pleading; 'the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'") (citing *Proctor & Gamble Defense Corp. v. Bean,* 146 F.2d 598, 601 n.7 (5th Cir. 1945)). Therefore, Defendants did not waive this defense.

Jones also asserts that the six-year limitations period in Section 1113 should be applied due to Defendants' commission of fraud or concealment.[116] But Jones has not pointed to anything showing that Defendants committed fraud or purposefully concealed information about the Plan. Nor has Jones pointed to anything countering Defendants' demonstration that he had actual knowledge of

---

[114] ECF 108, at 19–20.

[115] ECF 110, at 14.

[116] ECF 108, at 20.

the alleged violations more than three years before filing suit. The claims in Court Two are time-barred.

### 2.      Counts 6–8

The administrative exhaustion requirement applies both to claims for benefits and for statutory violations of ERISA. *Bickley*, 461 F.3d at 1328; *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315–16 (11th Cir. 2000); *Counts v. Am. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108–09 (11th Cir. 1997). Under exceptional circumstances, a district court may excuse exhaustion when the administrative process would be futile. *Perrino*, 209 F.3d at 1315–16 (citing, *inter alia*, *Counts*, 111 F.3d at 108).

Counts Six, Seven, and Eight all assert statutory ERISA violations under 29 U.S.C. § 1104 for Defendants' alleged breaches of fiduciary duty. They are all also closely tied to Jones's claim for the denial of benefits. He did not, however, raise them before the Administrative Committee. Instead, Jones asserts that Defendants conceded exhaustion.[117] This is disingenuous. In answering Jones's original pleading, Defendants admitted that the causes of action then-asserted had been exhausted.[118] They did not make any such concession with regard to the new

---

[117]  *Id.* at 22.

[118]  ECF 22, ¶¶ 13, 61.

Counts Six, Seven, and Eight, which Jones raised for the first time in his amended pleading.[119]

Jones also contends that, because Defendants did not assert a failure to exhaust as an affirmative defense, they have waived it. Jones has it backward. It was Jones's duty to prove he exhausted administrative remedies or show that it was excused. *Brown v. United Parcel Serv. of Am., Inc.*, Case No. 1:20-cv-460-TCB, ECF 49, at 7 (N.D. Ga. Aug. 27, 2020) (citing *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160–61 (11th Cir. 1992)). And this he has failed to do.

### i.    Exhaustion was required.

Jones asserts that the Plan does not say anything about exhaustion for breach of fiduciary duty claims, so he was not required to do so.[120] This is plainly contrary to the law in the Eleventh Circuit *and* the language of the Plan. As discussed above, this Circuit strictly enforces the exhaustion requirement even when a plaintiff's claims are based on violations of ERISA rather than a denial of benefits. *Bickley*, 461 F.3d at 1330; *Perrino*, 209 F.3d at 1315–16, 1315 n.6; *Counts*, 111 F.3d at 109. Nothing in the administrative record indicates that Jones ever raised breach of fiduciary issues during that review process. Moreover, the Plan

---

[119] *See generally* ECF 97.

[120] ECF 108, at 23–24.

requires that a person "claiming a benefit, requesting an interpretation or ruling under the Plan, or requesting information under the Plan shall present the request in writing to the Committee Chair."[121] If the claim or request is denied, a person can request review.[122]

The March 16, 2015 letter from Jones's attorney to the Administrative Committee initiating his claim for benefits says nothing about breaches of duty. Rather, at that time, Jones demanded only retirement pension benefits.[123] Jones's July 1, 2015 letter appealed the initial benefits determination but said nothing about fiduciary duties either.[124] A subsequent letter from counsel focused on Jones's disability from 1999 through 2004.[125] Nowhere does it suggest that the denial of Jones's benefits was caused or infected by a purported failure of Defendants to investigate, a conflict of interest, or a failure to follow the Plan's procedures. Jones was required to present these issues to the Administrative Committee in the first instance, and he did not.

---

[121]   ECF 119-3, at 45 § 7.04-1.

[122]   *Id.* 45–46 § 7.04-4.

[123]   ECF 120, at 61–62.

[124]   *Id.* at 79–80.

[125]   *Id.* at 93.

###### ii.     Jones did not show futility.

The Eleventh Circuit has held that limited exceptions to exhaustion exist to recognize "that there are situations where an ERISA claim cannot be redressed effectively through an administrative scheme." *Perrino*, 209 F.3d at 1318. This is not one of those cases. Where a plan's administrative scheme relates to claims, but also provides that the administrator has the responsibility and discretion to control the administration of the plan and resolve questions arising related to the operation or administration of the Plan, exhaustion of statutory ERISA claims is *not* futile. *Bickley*, 461 F.3d at 1329.

Here, the Plan provides that

> [t]he Administrative Committee shall interpret the Plan, shall decide any questions about the rights of Participants . . . and in general shall administer the Plan. . . . Any decision by a Committee shall be final and bind all parties. Each Committee shall have absolute discretion to carry out its responsibilities.[126]

This demonstrates that there was an administrative review process of which Jones could have availed himself. Other than noting that futility excuses exhaustion, Jones makes no argument about why raising his breach of fiduciary duty claims would have been futile here. The Administrative Committee examined his claim,

---

[126]   ECF 119-3, at 44 § 7.02-1.

concluded that his disability extended through 2004, and rendered a reasonable decision based on the evidence. Nothing about that process suggests that it would have been futile for Jones to likewise follow it for his breach of fiduciary duty claims. Therefore, Counts Six, Seven, and Eight are dismissed for failure to exhaust the administrative process.

### C.    Counts 3–5

Because Jones's remaining claims are dependent on the viability of his ERISA and fiduciary duty claims, summary judgment in favor of Defendants on Counts Three, Four, and Five is also warranted.

## III.   Conclusion

Plaintiff's motion to supplement the administrative record [ECF 119] is **GRANTED in part** and **DENIED in part**. Exhibit 3 to the motion to supplement [ECF 119-3, at 2–62] shall be included as part of the certified administrative record.

Defendants' motion for judgment on the administrative record and summary judgment [ECF 102] is **GRANTED**. Defendants' motion to exclude

testimony from Plaintiff's expert is **DENIED AS MOOT** [ECF 103]. The Clerk of

Court is **DIRECTED** to **CLOSE** this case.

    **SO ORDERED** this the 28th day of September 2021.

                                 Steven D. Grimberg
                        United States District Court Judge